UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AUTUMN MONTGOMERY AND NATESHUS JACKSON** | **CIVIL ACTION NO.: 2:19-CV-02208** |
| **VERSUS** | **JUDGE ELDON E. FALLON** |
| **WAITR HOLDINGS, INC.** | **MAGISTRATE JUDGE DOUGLAS** |

**OPPOSITION TO MOTION TO COMPEL ARBITRATION**

Plaintiff Nateshus Jackson did not agree to arbitrate his claim against Waitr. The Agreement attached to Mover's Memorandum (Doc. 16-2) specifically provides that a contract is formed only upon execution by the parties. The Agreement requires acceptance by actual signatures, and on its face demonstrates this essential element is missing.

When a party seeks to compel arbitration based on a contract, the first question is whether there is a contract between the parties at all. *Arnold v. Homeaway, Inc.,* 890 F, 3d 546, 550 (5th Cir. 2018); *Kubala,* 830 F.3d at 201-02. *Edwards v. Doordash, Inc.,* 888 F.3d 738, 744 (5th Cir. 2018), cit. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).[1] Arguments that an agreement to arbitrate was never formed are to be determined by the court even where the agreement delegates issues of arbitrability of the dispute to the arbitrator. *Edwards,* 888 F.3d 738, 744 (5th Cir. 2018), See *Kubala*, 830 F.3d at 202.

In conducting this first inquiry the Court distinguishes between "validity or enforceability" challenges and "formation or existence" challenges. *Homeaway,* 890 F.3d at 550

---

[1] Following *Buckeye* and *Rent–A–Center*, we must distinguish arguments regarding the validity of the arbitration agreement from arguments regarding the validity of a contract as a whole. *Edwards*, 888 F.3d 738, 743–44 (5th Cir. 2018) (citations omitted).

1

(citing *Rent-A-Ctr.*, 561 U.S. at 70 n.2; *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 n.1 (2006).

Though the difference between formation and validity may be unclear at the margins, the category of arguments that question the very existence of an agreement include whether the alleged obligor ever signed the contract. *Id.* quoting *Buckeye*, 546 U.S. at 444 n.1. "[I]t is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract." *Will-Drill Res., Inc.,* 352 F.3d at 218.

Federal courts apply state law to evaluate the underlying agreement. *Edwards*, 744 cit. *Banc One Acceptance,* 367 F.3d at 430. Louisiana adopts the federal two-step analysis to determine whether a party is required to arbitrate. La. R.S. 9:4201; *Donelon v. Shilling,* 2019 WL 993328 (La. App. 1 Cir. 2/28/19), *Aguillard v. Auction Mgmt. Corp*., 908 So.2d 1, (La. 2005).

The first inquiry is whether the party has agreed to arbitrate the dispute. *Donelon* at * 13. Arbitration is a matter of contract; a party cannot be required to arbitrate any dispute he has not agreed so to submit.[2]

The party seeking arbitration has the burden of proof to establish the existence of a valid and enforceable arbitration agreement. See *Lafleur*, 960 So.2d at 109. The policy favoring arbitration does not apply to this initial determination. *Donelon* at * 13, *Snyder*, 899 So.2d at 62. Rather, ordinary state law contract principles determine who is bound. *Id.*

If Mover makes the required showing the burden shifts to the plaintiff to demonstrate that he did not consent to arbitration or his consent was vitiated by error, which rendered the arbitration provision unenforceable. *Id.*

---

[2]*Donelon* at * 13, *Snyder,* 899 So.2d at 63 (citing *Billieson v. City of New Orleans,* 863 So.2d 557, 561, (La. App. 4th Cir. 2003), writ den. 870 So.2d 303

Under Louisiana law valid contract formation requires (1) a lawful purpose, (2) capacity to contract, (3) free and mutual consent (3) and a cause or reason for obligating oneself. *Bowman v. 84 Lumber Co.*, L.P., 2009 WL 1323015, at *1 (E.D. La. May 8, 2009).

A party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him. *Donelon*, at *23 cit. *Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La.1983).

The Agreement Waitr submitted in support of its Motion bears the purported facsimile signature of Waitr's president, and no signature after "Contractor". Plaintiff has attested by Affidavit that he did not read or sign the Independent Contractor and Software License Agreement when he was hired by Waitr. (Exhibit 1). He does not believe he was asked to read and sign the Agreement before he was hired, or afterwards. *Id.*

One can be bound by an arbitration agreement he did not sign under "beneficial estoppel" doctrine. *Donelon*, at *16.[3] Under that theory a plaintiff may not avoid arbitration if he sues to enforce the contract containing the arbitration provision. Beneficial estoppel does not apply in this case because Mr. Jackson does not seek to enforce the so called "Independent Contractor and Software License Agreement". He is not seeking to recover the delivery fee described in the document. Mr. Jackson actually denies that he and similarly situated drivers were independent contractors, and denies the contract is enforceable at all, because he was at all times an employee of Waitr and the Defendant was his employer within the meaning of the FLSA. Amended Complaint, ¶15-3, 15-4, 15-5, and 15-7.

---

[3]*Courville v. Allied Professionals Insurance Co.*, 218 So.3d 144, 148, n.3 (La. App. 1st Cir. 2017); writ den. 228 So.3d 1223

Jackson contends the so called "Independent Contractor and Software License Agreement" is void and unenforceable in its entirety because it violates the mandatory FLSA minimum wage and overtime pay requirements. Because Jackson's claims are not associated with the enforcement of the contract containing the arbitration provision, he is not bound to arbitrate the claims under Louisiana law, unless he voluntarily signed the contract. *Donelon,* at *16.

In *Aguillard*[4] the La. Supreme Court found an arbitration agreement enforceable because the plaintiff signed the contract "acknowledging that he ... read and [understood the] AUCTION TERMS & CONDITIONS and agree[d] to be bound thereby". The court found further:

> "After careful review of the terms of the arbitration clause, we find nothing sufficient to establish the defendants were in such a superior bargaining position as to render the plaintiff a far weaker party or the contract adhesionary, *nor do we find anything in the document itself that would call into question the validity of plaintiff's consent to the terms of the agreement as indicated by his signature.* The doctrine of contract of adhesion is inapplicable in this case."

908 So. 2d 1, 24 (emphasis added)

The Agreement attached to Mover's Memorandum (Doc. 16-2) specifically provides that a contract is formed only upon execution by the parties:

> "AGREEMENT:  NOW, THEREFORE, in consideration of the premises, mutual covenants and agreement hereinafter contained and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and <u>upon execution by the parties hereto of this Agreement,</u> the Company hereby engages Contractor, and Contractor hereby accepts such engagement, as an independent contractor to provide Delivery Services (as defined below) on the terms and conditions set forth in this Agreement."

Doc. 16-2, p. 4 of 28 (emphasis added)

When in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form.  La.

---

[4]*Aguillard v. Auction Management Corp.*, 908 So. 2d 1 (La. 2005)

Civ. Code. Art. 1947. The Agreement attached to Mover's exhibit requires acceptance by actual signatures, and on its face demonstrates this essential element is missing:

> "IN WITNESS WHEREOF the Company and Contractor have each caused this Agreement <u>to be signed and delivered</u> by its duly authorized officer or representative, all as of the Effective Date: October 5, 2016. Contractor Signature: <u>None.</u>"

> *Id.*, p. 23 of 28 (emphasis added).

Note: The Agreement Waitr submitted in support of its Motion contains an execution page with the purported facsimile signature of Waitr's president, dated October 5, 2016. There is no signature after the word "Contractor". Doc. 16-2, p. 23 of 28. Plaintiff has attested by Affidavit that he did not read or sign the Independent Contractor and Software License Agreement when he was hired by Waitr. (Exhibit 1). Mr. Jackson believes he was hired in January 2017. See Supplemental and Amending Complaint, Doc. 3, ¶ 15-1. If that is so, it appears (a) someone at Waitr attached a predated form execution page bearing a facsimile signature of the president to a copy of the "Agreement", either as a matter of routine practice or specifically for use as an exhibit in support of the Motion, and (b) Ms. Jeanine Hebert's Declaration, that the Exhibit is a true and correct copy of an Agreement executed on October 5, 2016, is false.

A separate undated document attached to Mover's exhibit is a printed form entitled "Employment Forms". Doc 16-2, p. 25 of 28. That document states:

> "Your signature below is required as an acknowledgement of your agreement to the attached documents."

The text is followed not by a signature but the printed name "Nateshus Jackson". There is no indication in the papers filed by Mover who typed in Plaintiff's signature, when or why. Jackson

attests he did not sign the "Employment Forms" document when he was hired by Waitr, or afterwards. Affidavit, Exhibit 1.

If Mr. Jackson had actually signed the document attached to the exhibit (which is clearly not part of the "Agreement") that would not have signified assent to the "Independent Contractor and Software License Agreement", because the Agreement was not attached to the form. The form refers only to attachments "Confidential Information_2838", and "Driver_Contract_726". Doc. 16-2, p. 25 of 28.[5]

The Agreement submitted in support of the Motion evidences lack of consent necessary to formation of a contract because the material terms including even the consideration for the engagement are not stated. Art. V Compensation, the Agreement states:

> "Contractor is entitled to receive as compensation for each completed Job (the **"Compensation"**) the percentage of the Delivery Fee actually received actually received by the Company with respect to each Job set forth on Schedule A, designated thereupon as the **"Compensation Calculation"**, as well as any gratuities or tips paid to Contractor through the Waitr Ap."

Doc. 16-2, p. 10 of 28

"Schedule A" is blank. *Id.*, p. 24 of 28. As noted above when the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form. La. Civ. Code. Art. 1947. The language cited above certainly indicates the parties intended that the form of the agreement contain a completed Schedule A stating the cause or consideration (Compensation) for the parties to be bound. See also La. Civ. Code Art.

---

[5] Waitr supposedly made an effective distinction between employees classified as Drivers and so called Independent Contractors. If Mr. Jackson had signed a document such as that attached to Mover's Tab A, signifying his agreement to be bound by Waitr's Driver Contract, (or if someone typed Jackson's signature on the form) that fact would evidence only that "contractors" were subject to the same rules and same degree of control Wait exerted over employee Drivers and therefore not exempt from the FLSA minimum wage and overtime requirements.

1949: Error vitiates consent when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.

### Absence of Bargaining Power

Although absence of bargaining power is a factor that goes to the issue of adhesion, (*i.e.* validity of the contract as a whole), under *Aguillard* bargaining power is also relevant to the question of consent (formation) which is clearly a threshold question for the Court. See *Edwards v. Doordash*, at 810.

Applicants for driver jobs at Waitr have no bargaining power. While Aguillard could have bargained for better terms or simply walked away from the auction, those seeking employment as on-demand drivers in the "gig economy" jobs have no real choice in the matter. In the wake of court decisions favoring employer use of mandatory arbitration agreements such agreements have proliferated and abound, and are now industry standard. There is no negotiation, and for sub-minimum wage workers victimized by unfair and oppressive wage practices, no choice but to forfeit their right of civil action under the FLSA.

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1636, 200 L. Ed. 2d 889 (2018) assumed but did not decide that assent can be inferred from continued employment. J. Ginsberg dissent questioned whether that kind of inferred consent can support a truly bilateral contract:

> "The Court's opinion opens with the question: "Should employees and employers be allowed to agree that any disputes between them will be resolved through one-on-one arbitration?" Ante, at 1619. Were the "agreements" genuinely bilateral? Petitioner Epic Systems Corporation e-mailed its employees an arbitration agreement requiring resolution of wage and hours claims by individual arbitration. The agreement provided that if the employees "continue[d] to work at Epic," they would "be deemed to have accepted th[e] Agreement." App. to Pet. for Cert. in No. 16–285, p. 30a. Ernst & Young similarly e-mailed its employees an arbitration agreement, which stated that the employees' continued employment would indicate their assent to the agreement's terms. See App. in No. 16–300, p. 37. Epic's and Ernst & Young's employees thus faced a Hobson's choice: accept arbitration on their employer's terms or give up their jobs."

Plaintiffs submit J. Ginsberg's concern is particularly relevant under Louisiana contract principles which require free and mutual consent, in a business climate where mandatory arbitration is industry standard and free and mutual consent is a fiction.

Conclusion

Plaintiff Jackson did not agree to arbitrate his claim against Waitr.  The purported arbitration agreement provides that a contract is formed only upon execution by the parties, and requires acceptance by actual signatures.  The documents submitted in support of the Motion demonstrates this essential element for an agreement to arbitrate is missing.

WHEREFORE Plaintiff prays that the Motion to Compel Arbitration be denied.


RESPECTFULLY SUBMITTED,

**BRINEY FORET CORRY**

/s/Christophe L. Zaunbrecher\
CHRISTOPHER L. ZAUNBRECHER (09546)\
BRINEY FORET CORRY, LLP\
413 Travis Street, Suite 200\
Post Office Drawer 51367\
Lafayette, Louisiana 70505-1367\
Telephone: (337) 456-9835\
Facsimile: (337) 233-8719\
E-mail:  zaunbrecher@brineyforet.com\
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has this date been presented to defendant's counsel via:

| | | | |
|---|---|---|---|
| ( ) | Hand Delivery | ( ) | Prepaid U.S. Mail |
| ( ) | Facsimile | ( ) | Certified Mail |
| (X) | E-Mail | ( ) | Federal Express |

Lafayette, Louisiana this 7th day of May, 2019.

/s/*Christopher L. Zaunbrecher*_____