UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**AUTUMN MONTGOMERY**  **CIVIL ACTION NO.: 2:19-CV-02208**
**AND NATESHUS JACKSON**

**VERSUS**  **JUDGE ELDON E. FALLON**

**WAITR HOLDINGS, INC.**  **MAGISTRATE JUDGE DOUGLAS**

_____

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR CONDITIONAL CLASS CERTIFICATION**
**AND FOR NOTICE TO PROSPECTIVE CLASS MEMBERS**

Plaintiff AUTUMN MONTGOMERY requests that this action be provisionally certified as a collective action pursuant to 29 USCA §216(b), that Plaintiff's counsel be authorized by the Court to give notice in the form attached hereto as Appendix A of the pendency of the action and of the right to join the action to:

FLSA W2 DRIVER CLASS

All Delivery Drivers employed by WAITR INCORPORATED or WAITR HOLDINGS, INC. in any state from March 6, 2016 to the present for whom the employer reported wages on IRS Form W2.

**BACKGROUND**

WAITR is in the business of providing restaurant meal ordering services to customers online and by means of a mobile phone app., and restaurant food delivery service using Delivery Drivers employed by WAITR. Plaintiff MONTGOMERY was employed by WAITR as a Delivery Driver in the New Orleans market area from December 2017 to May 2018.

The Fair Labor Standards Act 29 U.S.C.A. §206(a) (1) (FLSA) requires employers to pay all employees a minimum wage of $7.25 per hour for each hour worked. During the relevant time period WAITR paid Delivery Drivers classified as employees ("W2 Drivers") a cash wage

1

of either $5.00 or $6.00 per hour and credited tips earned by Plaintiff to satisfy the balance of Defendant's obligation to pay federal minimum wage ($7.25).

WAITR required all Delivery Drivers to provide and maintain at their own expense a licensed and insured automobile to make deliveries, and to bear all costs associated with operating the vehicle. After taking auto expenses into account, MONTGOMERY and all similarly situated W2 Drivers received a net sub minimum wage each workweek. Under those circumstances requiring Plaintiff and similarly situated Delivery Drivers to provide the tools of WAITR's trade is a prohibited "kickback" under 29 C.F.R. §531.35.

WAITR owes all members of the FLSA W2 Driver Class reimbursement for all auto expenses at the rate of $0.545 per mile, plus an equal additional amount as liquidated damages plus Plaintiff's reasonable attorney fees and expenses incurred to remedy the FLSA minimum wage violations. MONTGOMERY brings this action in an individual capacity and pursuant to 29 U.S.C.A §216(b) in a representative capacity for all members of the FLSA W2 Driver Class.

**The Law on Collective Action Certification**

The FLSA affords workers the right to sue collectively on behalf of themselves and others similarly situated for violations of the Act's minimum wage provisions and overtime protections. 29 U.S.C.A. §216(b). Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, potential class members in an FLSA collective action are required to notify the court of their desire to opt-in to the action. *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 797–800 (E.D. La. 2007)

In certifying FLSA collective actions district courts commonly follow the two stage *Lusardi* approach, described in *Mooney v. Aramco Services, Co.*[1] See *Lima,* 493 F. Supp. 2d at

---

[1] *Mooney v. Aramco Services, Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003).

797-800, *Hobbs v. Cable Mktg. & Installation of Louisiana, Inc.,* 290 F. Supp. 3d 589, 594–95 (E.D. La. 2018), *Portillo v. Permanent Workers, LLC,* 662 Fed. Appx. 277, 280 (5th Cir. 2016).

At the first step the plaintiff moves for conditional certification, which requires the district court to decide, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff. *Portillo* at 280–81, citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir. 2008). At the second step, which usually occurs after discovery, the defendant moves for decertification and the court is required to decide whether similarly situated employees have actually joined the lawsuit. *Id.*

At the provisional or notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. *Lima,* at 798.[2] Because the court has minimal evidence at the first stage, the determination is made using a fairly lenient standard, and typically results in conditional certification. *Lima*, at 798, *Mooney*, 54 F.3d 1207, 1214, *Marshall v. Louisiana* 2016 WL 279003 at *8 (E.D. La 1-22-16).

Though unsupported factual assertions will not suffice[3], a plaintiff must present "nothing more than substantial allegations that potential opt-in plaintiffs were together the victim of a single decision, policy, or plan."[4] The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation. Whether

---

[2]Cit. *Badgett,* 2006 WL 2934265, at *2; Lentz, 2007 WL 1628853, at *3 (*citing Simmons v. T–Mobile USA, Inc.*, 2007 WL 210008, at *9 (S.D. Tex. Jan.24, 2007).

[3] *Lima,* 493 F.Supp.2d 793, 798

[4] *Mooney*, 54 F.3d at 1214 n.8; *Marshall v. Louisiana* 2016 WL 279003 at *8

employees are 'similarly situated' for purposes of the FLSA is determined in reference to their job requirements and with regard to their pay provisions.[5]

In *Lima* the Court granted provisional certification based on affidavits by the named plaintiffs and three opt-ins who stated (1) they all worked for the defendant during the relevant time period, (2) they were not paid proper wages due to a company-wide policy, (3) they were subject to identical pay practices (receiving "straight time" for all hours worked including overtime), and (4) they were not exempt from the FLSA's overtime wage provisions.

The Court found the pleadings and affidavits warranted provisional certification of a class that included all persons who performed manual labor for the defendants directly or through subcontractors, and did not receive overtime pay.

> "Accordingly, given the lenient standard at the notice stage, the Court is satisfied that the Plaintiffs and other individuals whom they seek to include within the class, including those who worked for other subcontractors, are "similarly situated" with respect to the Defendants' pay provisions so as to justify conditional certification and notice to potential class members."

The Court rejected the argument that the affidavits were insufficient to show a "common plan or practice" with respect to other subcontractors, because: "….a review of the Defendants' pay records and agreements to subcontract will easily reveal whether a common plan existed to improperly pay overtime salaries. It seems appropriate to certify the collective action at this time and revisit the question later after some discovery." *Lima,* at 799-800

Following *Lima,* courts typically conclude concerns such as whether job requirements may vary depending on the location where potential class members work should be dealt with at the second stage of the *Lusardi* approach, because they often favor narrowing the scope of a class rather than failing to certify it altogether. *Marshall*, at *8, citing *Lima*, 493 F. Supp 2d 793,

---

[5] *Lima* at 798, cit. *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir.1991)

800, cit. *Kaluom v. Stolt Offshore, Inc.* 474 F. Supp. 2d 866, 875 (S.D. Tex. 2007); see also *Donahue v. Francis Services, Inc.,* 00 WL 1161366 (E.D. La. 2004)

**The Evidence**

The declaration of Autumn Montgomery and affidavit of Opt-in Plaintiff Kirk Comeaux are attached to this Memorandum as, respectively, Exhibit AM and Exhibit KC. Montgomery was employed by WAITR as a Delivery Driver in the New Orleans market area from December 2017 to May 2018 at a base wage of $6.00 per hour. AM ¶ 2, 3. Comeaux was employed by WAITR as a Delivery Driver in the Lafayette market area, from December 22, 2017 to September 1, 2018 at a base wage of $5.00. KC ¶ 2. WAITR credited tips received by the employees to satisfy the employer's obligation to pay federal minimum wage ($7.25). KC ¶ 2.

During orientation Montgomery and Comeaux were told WAITR required all Delivery Drivers to provide a licensed and insured automobile to make deliveries, and to bear all costs associated with operating the vehicle. AM ¶ 4, KC ¶ 4.

Attached to Montgomery's affidavit are data excerpts from her Stride Tax mobile app. that measured the number of miles and hours Montgomery drove here vehicle each day picking up and delivering food orders for WAITR. Exhibit AM.1. Exhibit AM.2 is a summary of the data depicted in Montgomery's trip log. According to this data in a typical workweek Montgomery worked 19.05 hours and drove her automobile 236.78 miles or more delivering food to customers for WAITR. At the 2018 IRS mileage reimbursement rate ($0.545 per mile) during an average week Montgomery incurred out of pocket expenses of not less than $129.05, or $6.77 per hour. Taking auto expenses into account, Montgomery received a net FLSA wage of $0.48 per hour ($7.25 - $6.77).

Exhibit KC.1 is a true copy of a log created and kept by Opt in Plaintiff Kirk Comeaux recording the hours he worked and the miles he drove his vehicle each day delivering food orders for WAITR. KC, ¶ 7. Exhibit KC.2 is a summary of the data depicted in Comeaux's log. KC, ¶ 8. In the 34 weeks for which Comeaux recorded miles for each day worked[6], he drove 10,583 miles, or an average of 311.26 miles per week delivering food orders to customers for WAITR. KC, ¶ 9. In the 37 weeks for which he recorded work hours for each day worked, he worked a total of 652.42 hours, or an average of 17.63 hours per week. KC, ¶ 10.

At the IRS mileage reimbursement rate ($0.545 per mile) during an average week, Comeaux incurred out of pocket expenses of approximately $169.63 or $9.62 per hour. KC, ¶11. Taking auto expenses into consideration Comeaux's average net income from WAITR was a negative (- $2.37) per hour. KC, ¶12.

**All Class Members Were Similarly Situated**

Montgomery and Comeaux verified WAITR expected all Delivery Drivers to average at least two deliveries per hour. AM ¶ 10, KC ¶ 4. Montgomery was told during orientation and regularly via the GroupMe Discussion Board by her Dash Supervisor and Management that WAITR expected all Delivery Drivers to average at least two deliveries per hour during each three to four hours shift, and that trainer/lead drivers were expected to average 2.7 deliveries per hour. AM, ¶ 10.

Drivers could select an order pickup radius of 3, 5, 10 or 15 miles on the DRIVR App. KC ¶ 5. The default setting in DRIVR was a 10 mile order pickup radius. AM ¶ 11, KC ¶ 7.

If the number of orders on screen of the DRIVR app was low or none, Drivers were told to set the pickup radius setting at 15 miles in order to increase the number of available orders.

---

[6] In averaging the data, weeks in which mileage for one or more days were missing were disregarded.

AM ¶ 11, KC ¶ 7.  Drivers were encouraged to keep the radius setting at 15 miles to maximize the number of available pickup orders. KC ¶ 7.  If deliveries fell below two per hour they were told to increase the mileage radius to 15 miles. KC ¶ 7.

Using the default radius setting (10 miles) a Delivery Driver who averaged only two deliveries per hour could incur auto expenses of $10.90 per hour (20 X $.0545) an amount that exceeded the wage paid by Waitr.[7]  Using a 15 mile radius a Driver who averaged only two deliveries per hour could incur auto expenses of $16.35 per hour (30 miles X $0.545), or more.

Using the minimum pickup and delivery radius (3 miles) a Driver who averaged only two deliveries per hour could incur auto expenses of $3.27 per hour (6) ($0.054), and suffer a minimum wage shortage of $3.98 per hour.  Those who had only one pick up and delivery within a 3 mile radius would suffer a minimum wage shortage equal to the mileage times $0.545. Those who had no order deliveries would also earn no tips; their wage for the day would be the $6.00 per hour base wage, *i.e.* below minimum wage. AM, ¶ 13.[8]

The affidavits submitted in support of the Motion demonstrate that WAITR's practice resulted in systemic minimum wage violations for all members of the FLSA W2 Class in exactly the same way.  When expenses are taken into account, requiring W2 Delivery Drivers to bear their auto expenses resulted in minimum wage shortages for the named Plaintiff, for Mr. Comeaux, and for all other Delivery Drivers at the rate of $0.545 per mile.  Which is to say, all members of FLSA W2 Driver Class were together the victims of a single decision, policy, or plan that violated FLSA. Provisional class certification is therefore appropriate.

---

[7] A conservative number, as delivery distances were not limited by the order pick up radius.  AM ¶ 12.

[8] FLSA minimum wage compliance is determined on a workweek basis. See 20 CFR *Sandoz v. Cingular* 2013 WL 1290204, at *6-7 (W.D. La. 2013), 29 CFR §776(4) (a), Wage Hour Opinion Letter No. 125 (11-14-62), Op. Letter No. 63 (11-30-16), *Luther v. Wilson*, 528 F. Supp. 1166 (S.D. Ohio 1981).  Work hours and pay for shifts with no deliveries, at $5 or $6 per hour would only enhance the weekly minimum wage shortage.

**Tolling of the Limitations Period**

The applicable statute of limitations period under the FLSA is set forth in 29 U.S.C. § 255. An action for collection must commence within two years after the cause of action accrued, unless the violation is willful, in which case the action must be commenced within three years. "Willful" means that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 128, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988).

A cause of action begins to accrue at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed. *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 272 (5th Cir.1987), modified on other grounds, 826 F.2d 2 (5th Cir.1987); see also *Hendrix v. Yazoo City*, 911 F.2d 1102 (5th Cir.1990) (cause of action begins to run on date employer makes unlawful payment).

In a collective action, the action is commenced in the case of an opt-in plaintiff on the date a written consent is filed. 29 U.S.C. § 256(b); *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir.1983), *Quintanilla v. A & R Demolition, Inc.*, 2006 WL 1663739, at *1 (S.D. Tex. June 13, 2006). This limitations period is subject to tolling on equitable grounds. *Hodgson v. Humphries*. Where grounds exist for provisional certification an order tolling the statute of limitations is appropriate.[9]

---

[9] See, e.g. Exhibit 1, Middle District Limited Scheduling Order (FLSA) p. 3 ¶ 7,): In the event that no settlement is reached pursuant to these procedures in a collective action, and this Court later grants a motion permitting notice to be sent to similarly situated individuals advising them of their right to opt-in to this action, the limitations period for any person receiving notice shall be tolled during the period from the date of this Order until the parties file a Status Report thereby lifting the stay on these proceedings

## CONCLUSION

At the notice stage all that is required for provisional certification is a substantial allegation that the putative class members were together adversely affected by the same pay policy or plan. There is no dispute about the relevant facts. The pay policy at issue applied uniformly to all Delivery Drivers classified as W2 employees, they all had the same job requirements and all suffered minimum wage shortages in the same way.

WHEREFORE Plaintiff requests (1) that this action be provisionally certified as a collective or representative action pursuant to 29 USCA §216(b) on behalf of Delivery Drivers employed by WAITR INCORPORATED or WAITR HOLDINGS, INC. in any state from March 6, 2016 to the present for whom the employer reported wages on IRS Form W2, (2) that WAITR be ordered to provide Plaintiff the names, addresses, telephone numbers, mobile phone numbers and email addresses for all such persons, (3) that Plaintiff be authorized to provide the attached Notice of the pendency of the action and of the right to join the action to all potential Class Members, and (4) for an Order tolling the statute of limitations for claims by prospective Class Members.

RESPECTFULLY SUBMITTED,

**BRINEY FORET CORRY**

/s/Christophe L. Zaunbrecher
CHRISTOPHER L. ZAUNBRECHER (09546)
BRINEY FORET CORRY, LLP
413 Travis Street, Suite 200
Post Office Drawer 51367
Lafayette, Louisiana 70505-1367
Telephone: (337) 456-9835
Facsimile: (337) 233-8719
E-mail: zaunbrecher@brineyforet.com
Counsel for PLAINTIFFS

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a copy of the foregoing has this date been presented to defendant's counsel via:

| | | | |
|---|---|---|---|
| ( ) | Hand Delivery | ( ) | Prepaid U.S. Mail |
| ( ) | Facsimile | ( ) | Certified Mail |
| (X) | E-Mail | ( ) | Federal Express |

Lafayette, Louisiana this 7th day of June, 2019.

                */s/Christopher. Zaunbrecher*_____